**MOLINOS De PUERTO RICO, INC.,**
**Hanover Insurance Company,**
**Plaintiffs,**

**v.**

**SHERIDAN TOWING COMPANY,**
**Defendant.**

**Civ. No. 802–71.**

United States District Court,
D. Puerto Rico.

Dec. 20, 1973.

---

Charles A. Cordero, San Juan, P. R., for plaintiffs.

Jorge Bermúdez-Torregrosa, Hartzell, Fernández, Novas & Ydrach, Hato Rey, P. R., for defendant.

## MEMORANDUM OPINION AND ORDER

CANCIO, Chief Judge.

Plaintiffs filed a motion for a partial summary judgment on the issue of liability and through clerical inadvertence plaintiff's brief which accompanied his motion for summary judgment was not brought to the Court's attention. Thus, on September 20, 1973 this Court denied plaintiff's motion for partial summary judgment without having the benefit of plaintiff's brief. Plaintiff promptly filed for reconsideration and it was at that time that plaintiff's previously submitted brief came to the attention of the Court. This Court will, therefore, at the outset grant plaintiff's motion for reconsideration and the Court now decides the issue of the partial summary judgment on its merits.

## THE UNDISPUTED FACTS

From the response to the Request for Admission of Facts by defendant, and from the sworn admissions contained in the statements by the vessel's captain and the response to the interrogatories, the following facts are undisputed:

On or about November 7, 1970, the Tug D. T. Sheridan and the Barge "James Sheridan" were in port in the San Juan Harbor and were departing from the Molinos Dock at Cataño Terminal, Cataño, Puerto Rico. After the aforesaid vessel departed from the Molinos Dock the stern came around and the Barge came back and struck the cluster piling which forms part of the Molinos Pier structure, damaging same. The Tug D. T. Sheridan and the Barge "James Sheridan" are both owned by the defendant, Sheridan Towing Co., Inc. Defendants deny their liability and claim a right to a trial based on the issue of fault.

Plaintiff seeks partial summary judgment under Rule 56, F.R.Civ.P., claiming that under local law, to wit; the provisions of 23 L.P.R.A. § 391, the shipowner is absolutely liable for damages caused to a harbor structure.[1]

The defendant counters that notwithstanding the absolute liability provisions of the statute, the defendant's liability must be based on fault or that otherwise the statute is unconstitutional; and that the above statute only applies to harbor structures which are public or semi-public property. Defendant further claims a right to trial because a formal denial of plaintiffs claim was filed.

## OPINION

(a) *The statute is constitutionally valid:*

For the reasons hereinafter set forth, the arguments of the defendant must fail and partial summary judgment on the issue of liability must be granted. It is clear that the statute imposes absolutely liability upon a vessel-owner for damages caused to any harbor structure whether the damages are by the vessel or its moorings, or by improper management of its crew, or by any other cause. The terms of the statute are clear and in the opinion of this Court are constitutionally valid.

The Commonwealth of Puerto Rico, under its police powers, may impose upon the vessel-owner liability without fault for damages to property owned by the Commonwealth or by private interests within its own navigable waters. The Commonwealth of Puerto Rico has such a right, not only because of the police powers found under the constitution of the Commonwealth of Puerto Rico, but also because of the provisions of the Federal Relations Act, 48 U.S.C. §§ 744, 747, 749 and 821. Under these provisions Puerto Rico has the power of making laws applicable to its own navigable waters and harbors. See Guerrido v. Alcoa (1956), 1 Cir., 234 F.

---

1. § 391. Damage to harbor structures

All owners, masters, consignees, agents, persons in charge and members of the crew of vessels shall take the necessary care not to cause damage to the docks, bulkheads, embankments *or any other part or structure of a harbor*, and the vessels shall be equipped with all the equipment necessary to avoid such damages. *Any damage caused by a vessel to the docks*, bulkheads, embankments *or any other structure or part of a harbor*, shall be repaired by, or for account of said vessel, whether the damage is caused by the vessel or its moorings, or by improper management of the vessel or improper handling of its cargo by its crew or men, or by any other cause; and the amount of the cost of repairs shall be paid by the owner, master, consignee, agent or person in charge of the vessel, without prejudice to the responsibility in which they may incur for violation of this section; Provided, That the Ports Authority official shall report to the Ports Authority any damage caused to the docks, bulkheads, embankments, shores, or navigation signals, stating the name of the person or vessel causing such damage, whether or not it has been repaired, and the cost of the repairs. (emphasis added)

2d 349; Fonseca v. Prann (1960), 1 Cir., 282 F.2d 153; Waterman S.S. Corp. v. Rodriguez (1961), 1 Cir., 290 F.2d 175.

As of this writing there is no known federal statute which would make the provisions of 23 L.P.R.A. § 391 inapplicable. It is therefore clear that Puerto Rico does have sufficient power to protect its own harbors and navigable waters and to make laws for the protection of its harbors and harbor facilities.

 Having confirmed the power of the Commonwealth of Puerto Rico to pass statutes applicable to the maritime field, we now review the allegation that the legislature of Puerto Rico has abused it's police powers in passing a statute which imposes absolute liability without fault upon a vessel owner that causes damage to a harbor structure.

The Supreme Court of the United States in the case Askew v. The American Waterways Operators, Inc., et al., decision dated April 18, 1973, 411 U.S. 325, 93 S.Ct. 1590, 36 L.Ed.2d 280 upheld a Florida statute that imposed a liability without fault provision upon owners of vessels and oil storage facilities for damages to private and state property caused by oil spillages within the territorial waters of Florida.

In upholding the liability without fault provision of the Florida statute, the Supreme Court noted that the language of the statute was so broad that there was no need to either plead or prove negligence. The Court said at page 1597 of 93 S.Ct.:

"The Florida Act imposes liability without fault. So far as liability without fault for damages to state and private interests is concerned, *the police power has been held adequate for that purpose.*" (emphasis added)

The U. S. Supreme Court in *Askew*, at page 1599 of 93 S.Ct., then cited with approval its earlier decision in the case of Just v. Chambers (1941), 312 U.S.

383, 61 S.Ct. 687, 85 L.Ed. 903 which said:

"Chief Justice Hughes added that our decisions as of 1941, the date of Just v. Chambers gave broad *'recognition of the authority of the state to create rights and liabilities* with respect to conduct within their borders, when the state action does not run counter to federal laws or the essential features of an exclusive federal jurisdiction, Id., at 391, 61 S.Ct. at 693.'" (emphasis added)

Thus, it is clear that under its police powers Puerto Rico can pass an absolute liability law for the protection of its harbor and pier facilities within Puerto Rico.

In the case at bar, the statute does not run counter to the general maritime laws, does not run counter to the interstate or international maritime law, and does not affect interstate or international commerce. Furthermore, the challenged statute is in no-way discriminatory since it applies equally to all operators and owners of vessels. Thus, the legislature of Puerto Rico has determined that recovery for damages to a harbor structure does not require proof of fault if said damages are caused by the operation of a vessel, or because of the manner of mooring said vessel.

The above cited statute is just as valid as the no-fault auto accident laws first passed by Puerto Rico and later followed and upheld by several other states, and is as constitutionally valid as the employees' workmen compensation laws passed by almost all states which permit employees to recover compensation for injuries received resulting from work related accidents regardless of fault.

(b) *The statute is not limited to public or semi-public harbor's structure:*

 Defendant next argues that the provisions of 23 L.P.R.A. § 391 apply only to harbor structures which are pub-

lic or semi-public property. In support of its contention defendant cites related statutes, to wit; Sections 393, 394 and 429 of title 23. The reasoning of defendant's arguments must fall short of their intended goal by virtue of the applicable provisions found under 23 L.P.R.A. § 382, which specifically states that said section is applicable to the sections 381 through section 431 of title 23 which, of course, includes the aforecited section 391. The provisions of 23 L.P.R.A. Section 382(*l*) defines a dock or port to mean any structure or parts thereof, within Puerto Rico, that touches in the maritime zone, or where cargo or passenger loading or unloading operations can be undertaken.[2]

With the aforesaid provisions of law any argument that the provisions of Section 23 L.P.R.A. § 391 are limited to public or semi-public property must be cancelled. It is clear that the statute applies to all harbor structures within Puerto Rico, whether they be public, semi-public, or private property.

(c) *Summary judgment is proper:*

■ A summary judgment is proper and should be used to eliminate the formal trial of cases where only questions of law are involved. Miller v. Board of Education (1971), D.C., 54 F.R.D. 393, aff'd., 6 Cir., 452 F.2d 894.

■ The object of a summary judgment is to determine if there are substantial and genuine material issues of fact, not just pretended issues which hope to cause a party the burden of trial. Richard v. Credit Suisse (Hon.

Justice Cardozo), 242 N.Y. 346 at page 350; 152 N.E. 110 at page 111.

■ Summary judgment is a procedural device which is used to avoid a useless trial and for promptly disposing of actions where there is no genuine material issue of fact involved, Mintz v. Mathers Fund, Inc., 7 Cir., 463 F.2d 495, and the opposing party must set forth highly specific facts and data showing there is a substantial genuine material issue of fact, since a summary judgment is a weapon of the Court intended to screen out sham issues; National Life Ins. Co. v. Silverman (1971) 147 U.S. App.D.C. 56, 454 F.2d 899, note 8 at page 909; United States v. Prince (2d Cir. 1965), 348 F.2d 746, at page 748.

■ Assertions, by affidavit or otherwise, that a genuine issue of fact exists for trial, or mere denials, or conclusionary denials even if under oath, are insufficient to defeat a summary judgment; Firemans Ins. Co. v. Gulf P. R. Lines (D.C.P.R., 1972), 349 F.Supp. 952; Gulf P. R. Lines v. Maicera Criolla (D.C.P.R., 1969), 309 F.Supp. 539; Ortiz v. National Liberty Ins. Co. (D.C.P.R., 1948), 75 F.Supp. 550.

■ The purpose of a summary judgment is to force the parties to present a complete disclosure of their evidence since a court must make a ruling on the basis of the affidavits and admissible evidence actually presented and not on what a party might hopefully be able to produce; United States v. Daubeniek, 25 F.R.D. 50, p. 56; Ortiz v. National Liberty Ins. Co. (D.C.P.R., 1948), 75 F. Supp. 550–551.

---

2. In Puerto Rico the maritime zone is defined by the provisions of 23 L.P.R.A. § 2103(n) which reads:
"(n) "Terrestrial maritime zone" shall mean the space of the coasts of Puerto Rico touched by the sea during its ebb and flow, where tides are noticeable, and where the largest waves during a storm are felt in places where tides are not noticed, and it includes the lands recovered from the sea and the river borders up to the place where they are navigable or where the tides are noticed; and the term, notwithstanding any condition, shall mean the terrestrial maritime zone of Puerto Rico."
This same definition was adopted by the Supreme Court of Puerto Rico in the case of Rubert Armstrong v. Commonwealth of Puerto Rico (1969), 99 PRR ——; 99 DPR 588.

Furthermore, a party opposing a summary judgment cannot offer evidence that by its nature is so incredible as to be unacceptable by reasonable minds, or that assuming its truth is without legal probative force; Dawn v. Sterling Drug (D.C.Cal., 1970), 319 F. Supp. 358; and a court must disregard evidence too incredible to be believed, Tomatoes v. United States (7 Cir., 1954), 211 F.2d 249; Dewey v. Clark (1950), 86 U.S.App.D.C. 137, 180 F.2d 766.

A court should equate a summary judgment to a directed verdict; Appolonio v. Baxter (6 Cir., 1954), 217 F.2d 267–271. Therefore, a scintilla of doubt will not bar a directed verdict or the issuance of a summary judgment since a jury may not rely on a mere scintilla of evidence in reaching its verdict. Ayers v. Pastime Amusement Co. (D.C.S.C., 1968), 283 F.Supp. 773 at page 793.

With the aforestated preamble of law applicable to summary judgment proceedings, and the undisputed facts as detailed above, this Court must rule that under applicable law and the facts of this case, plaintiff's motion for summary judgment should be granted.

The Legislature of Puerto Rico has predetermined that all shipowners are liable for the damages they may cause to a harbor structure, and the defendant has failed to come forth with specific facts or data sufficiently strong to overcome the force of law.

Furthermore, defendant's formal denial of liability, or their conclusionary statements as to the existence of the issue of liability, whether or not under oath, are insufficient to burden plaintiff and this Court with a full trial. Defendant's admission that it collided and damaged a harbor structure is sufficient in this case, because of the applicable law to warrant the summary judgment.

The Chief Justice of the United States Supreme Court, Honorable Warren W. Burger, has made public statements concerning the need for streamlining procedures which will help decongest court calendars and accelerate the dispatching of justice. The summary judgment proceeding is one rule that is presently in existence which can be used to effectuate the goals of our Chief Justice. In fact, this Court has long used summary judgment proceedings (Ortiz v. National Liberty Ins. Co., supra) with that very goal. Just last year, in Firemans Ins. Co. v. Gulf P. R. Lines, supra, this Court granted summary judgment in a case where the prescriptive statute clearly applied, notwithstanding allegations, under oath, of the existence of estoppel and of conduct by the plaintiff which allegedly could overcome the applicability of prescription. In fact, the Supreme Court of the United States has paved the way for such action by the Court setting the standards to be followed.

In the case of First Nat'l Bank v. Cities Service Co., 391 U.S. 253, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 1569 at pages 289–290, the Court said:

" . . . (to) permit plaintiffs to get to a jury on the basis of the allegations in their complaints, coupled with the hope that something can be developed at trial in the way of evidence to support those allegations, we decline to accept it. While we recognize the importance of preserving a litigants' rights to a trial on their claims, we are not prepared to extend those rights to the point of requiring that anyone who files an antitrust complaint setting forth a valid cause of action be entitled to a full-dress trial notwithstanding the absence of any *significant probative evidence* tending to support the complaint." (Emphasis added.)

To the above, this Court adds that summary judgment must issue and a party is not entitled to a full dress trial "in the absence of any significant

probative evidence" tending to support his opposition to the summary judgment.

In view of the foregoing, it is hereby ordered that the order of this Court dated September 20, 1973 be, and the same is hereby, vacated; and it is further ordered that plaintiff's motion for summary judgment on the issue of liability be, and the same is hereby, granted.

The Clerk of this court shall set this case for a pretrial conference on the issue of damages, and shall place it on calendar for trial of said issues.

It is so ordered.